Caruthers, J.,
delivered the opinion of the Court.
This was a contest upon the will of Margaret Stew *165 art. The issue was decided in favor of the will, and an appeal in error, by the contestant.
The error assigned is upon the charge of the Court on the question of revocation. He said:
“ That if the alleged testatrix burnt a paper which she believed was her will, but in that was mistaken, it would be no revocation. Parol declarations that she had no will, amount in law to no revocation. Evidence that the alleged testatrix had, subsequent to the execution of the alleged will, made conveyances of a portion of the same property named in the will, was admitted only on the question of capacity, and if her capacity is not attacked, such evidence is irrelevant, and ought not to be considered.”
The charge is applicable to the facts proved, and the question is, whether it. is sound law. There is no doubt but that she made and executed the paper as her will, but there is just as little, that she thought she had destroyed it, and died in that belief. This is proved by her uniform declarations, and by her acts in disposing of some of the same property by deeds, and in applications made to friends to write another will for her, on the ground that she had destroyed her first. She became dissatisfied with the principal legatee, and determined to change her purpose. She disclosed to various persons, that she went to the drawer, where she caused her will to be deposited, took it out, and burnt it up —that she knew it was her will by a certain red ribbon that she had tied around it. There can be no doubt but that she believed the paper she burned was her will, and, perhaps, just as little, that some one had removed the paper without her knowledge, and thus de *166 ceived her. It seems afterwards to have been in possession of Gambill’s son-in-law. She failed by mistake to accomplish her object, and it is more than likely that this mistake was caused by the fraud of others. She then lived at the house of her son-in-law, G-ambill, the executor and main legatee whose interest it was to prevent its destruction.
Most of the States have statutes similar to that of the. English statute of frauds on this subject, prescribing the acts that will revoke a„ will. “ Burning, can-celling, tearing or obliterating,” are the words generally used. There are many nice distinctions drawn in the books, in the construction and application of these words, and some of the cases on those statutes seem to sustain the charge. But we have no statute of the kind. The only reference to the subject of revocation in our legislation, is that. in the 14th section of the act of 1784, ch. 22, which provides that “no written will shall be altered or revoked by a subsequent nuncupative will, except the same be in the lifetime of the testator, reduced to writing,” &c. But this is confined to that particular and single mode of revoking, and does not prohibit any other mode known to the law, independent of any statute regulation on the subject. It will not be controverted by any one, that where the maker of a will destroys it in any manner, or causes it to be done, with the intention that it shall no longer exist, that it is revoked, and can never be set up. This power over it results from its very nature. It is ambulatory, and has no vitality or binding force until the death of the maker — it only speaks from the death. It is a dead letter and binds no one until that time. It is the death of the *167 testator which gives life to the testament. A simple determination of the mind, never executed, no matter how often declared or strongly, made, however, cannot have the effect to avoid the writing, hut this must he accompanied hy some act designed to carry out the purpose of revocation.
All this is plain enough, hut the question recurs, is the object accomplished in law, where, hy mistake, or the fraudulent interposition of others, the thing intended to he done, was not, hut the paper, contrary to the maker’s intentions and belief, was. still preserved ? If this were so it' would he an anomaly.
In Ford v. Ford, 7 Hum., 104, the Court say, that “if a testator, being of sound mind, told the witness to burn the will, and it was not done, although he supposed it to have been burned, it is a revocation,” or rather, that the contrary, as held hy the Circuit Judge, was not law. They say, in effect, if a man is deceived by the burning of another- paper, which he supposed was his will, it would be sufficient to revoke. The Court admits, very correctly, in the same case, that a mere intention to revoke, however strong, without some act, will not be sufficient. The cases cited in 1 Jarman on Wills, 116 to 118, are in accordance, in principle, with the case of Eord. A Pennsylvania' case, reported in 1 Smith, 41, cited by Jarman in a note, p. 117, holds, “ that a will made many years before, and believed by the testator to be destroyed, but detained by one of the devisees to prevent its being cancelled or altered, was thereby avoided. This is correct, with the qualification that some act was done,, or' attempted to be done upon it, with the intention to revoke. Revocation is a *168 question of intention, and evidence is admissible to show that intention, by any act done, or believed to have been done. The act doné, or aimed to be done, as well as the purpose of the mind for which it was done, are matters of fact for the jury. Burns v. Burns, 4 Serg. & Rawle. And these may be established as other facts, by one credible witness, or convincing circumstances. But what facts amount to a revocation, is, of course, a question of law.
In this case, if the jury believed, as a .matter of fact, that Mrs. Stewart burnt a paper which she thought was her will, although it was not, with the intention of revoking by its destruction, and honestly believed that she had done it, and continued in that belief, without any subsequent recognition, or even knowledge of its existence, the paper propounded would not be her will. As testimony bearing on this question, the excluded facts in relation to the sale of her property afterwards, were admissible as circumstances. Her declarations alone might not be sufficient, but they were competent, and it would be for the jury to determine whether they, together with other facts proved, made out the fact of burning, or intention to do so, by the act done.
For these errors in the charge of the Oourt, the judgment must be reversed, and a new trial granted.